**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Palmaria BROWN and Sharon Dixon**
**Porter, Defendants–Appellants.**

No. 88–1805.

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1989.

538

Richard Docobo, Coral Gables, Fla., for Palamaria Brown.

Richard A. Anderson, Dallas, Tex., court appointed, for Sharon Dixon Porter.

Delonia A. Watson, Asst. U.S. Atty., Marvin Collins, U.S. Atty., and James T. Jacks, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before JOHNSON, WILLIAMS and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Palmaria Brown ("Brown") was convicted of five out of six counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Brown was also convicted of one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and 21 U.S.C. § 841(a)(1). Appellant Sharon Dixon Porter ("Porter") was convicted of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Both appellants allege that various errors at the trial court require reversal. This Court affirms the convictions but remands for resentencing as to each appellant's conviction of conspiracy to possess with intent to distribute.

## I. FACTS AND PROCEDURAL HISTORY

Viewing the evidence in the light most favorable to the government, pursuant to *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942), the complex facts of this case indicate that the central conspiracy was an agreement between Brown and Porter, the two appellants, along with Mikey Price ("Price"), Brown's husband, to deliver large quantities of cocaine to crack house operators in Dallas, Texas. In April of 1986, deliveries began to Carl Livingston Douglas ("Douglas"), a Jamaican national who operated several Dallas crack houses. Until Douglas was deported in September of 1986, deliveries were made to him by either Brown or Price every two or three weeks, in varying amounts of seven to ten ounces each delivery. When Douglas was arrested in July 1986, his wife Barbara Choice ("Choice") began operating Douglas' crack houses, and deliveries from Price and Brown continued during this time. Appellant Porter apparently made one delivery to Choice while Douglas was in jail, prior to being deported. Brown also made several deliveries to Lisa Bell ("Bell"), an employee of Douglas.

In November 1986, Douglas illegally reentered the country, reestablished contact with Price and resumed operation of his crack houses. Price supplied Douglas with more cocaine, and shortly thereafter, Douglas prevailed on Bell to go to Florida for Price and transport cocaine back to Dallas. When Douglas complained that the cocaine contained too much vitamin B additive, Price sent Bell with more cocaine to replace the poorer quality cocaine. It is not clear from the record who accompanied Bell to Florida to transport the cocaine to Dallas. Bell, however, testified that Porter accompanied her. Price continued to supply Douglas with cocaine until Douglas was again arrested in March of 1987.

Once again, Choice took over Douglas' operation, and received from one to two ounces of cocaine a day from Price until September of 1987. Brown, Porter and Price made deliveries to Choice. Brown also delivered cocaine to Bell. In April of 1987, Porter and Bell made another trip to Miami and received cocaine from Price and Brown, to bring back to Dallas. Porter and Bell made a similar trip to Miami in May of 1986; both times, the women brought back between sixteen and eighteen bags of cocaine each, which they hid in their bras and girdles.

During this same time period, from March to September 1987, Price, Brown and Porter began making deliveries to other crack houses in Dallas; Price also began operating his own crack house.

On October 17, 1987, appellants Porter and Brown were indicted for the charges previously indicated. Porter and Brown pleaded not guilty; both were convicted by a jury. Brown was sentenced to seven fifteen-year terms to be served concurrently, and Porter was sentenced to a ten-year term. Brown and Porter raise several points of error, which are discussed below.

## II. DISCUSSION

This Court determines that no reversible error has been shown. However, for rea-

sons discussed below, we remand these cases to the district court for resentencing as to Count I.

### A. *Sufficiency of Evidence as to Count I*

■ On Count I, both Brown and Porter were convicted of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a). Section 841(a) of Title 21 prohibits the possession with the intent to distribute *any* amount of cocaine. Section 841(b) prescribes penalties which depend upon the amount of cocaine involved. Pursuant to this section, the most serious penalties arise when the quantity involved is five kilograms or more. Brown and Porter contend that proof of the quantity of the illegal substance is an essential element of the section 841(a) offense; therefore of the conspiracy with which they were convicted. They further contend that the government failed to prove that the amount involved exceeded five kilograms. This Court has held "that quantity is not an element of the crimes proscribed by sections 841(a)(1) and 846 and need only be proved when the government seeks an enhanced penalty." *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir.1987) (citations omitted).[1]

■ Furthermore, the government succeeded in putting forth sufficient evidence to show that more than five kilograms of cocaine was involved. On appeal, this Court "must examine all the evidence and reasonable inferences in the light most favorable to the government and determine whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Fortna*, 796 F.2d 724, 740 (5th Cir.1986) (citations omitted), *cert. denied*, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386. The testimony of various witnesses at trial, who were involved in the operation of receiving and selling drugs, would readily lead a reasonable jury to conclude that more than five kilograms of cocaine was involved. The total quantity supported by the testimony is approximately 5,796 grams of cocaine. (There are one thousand grams to a kilogram). Accordingly, we decline to reverse on this point.

■ Brown and Porter also argue that there is insufficient evidence to show a single conspiracy. They contend that two conspiracies were shown, one to transfer cocaine from Price in New York to Douglas in Dallas, and a second for the purpose of distributing the cocaine in Dallas. Appellants claim that distinct amounts of cocaine can be attributed to each conspiracy, thus decreasing the amount of cocaine involved in the conspiracy with which the appellants were charged in the indictment. Appellants also claim that a material variance between the indictment and the proof of the conspiracy requires reversal.

A reversal in this case would require two findings, "(1) the evidence at the trial actually proved two separate conspiracies and (2) the variance affected 'the substantial rights' of the appellants." *United States v. Winship*, 724 F.2d 1116, 1122 (5th Cir. 1984) (citations omitted). The first question, is one for the jury. In this case the jury was instructed as follows:

A 'conspiracy' is an agreement by two or more persons to do something illegal.

You should first determine whether or not the evidence established the existence of the single conspiracy alleged in the indictment. Proof of several different conspiracies does not establish this single conspiracy—unless one of the conspiracies proven is the conspiracy charged in the indictment.

Record Vol. 2 at 106. This Court makes five inquiries to determine whether the record establishes one or more conspiracies. These are known as the *Marable* factors: "(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to

---

1. At oral argument, appellants conceded that caselaw does not support their position, but they nevertheless contest the result. Accordingly, we briefly reaffirm the holding in *Morgan*.

punish in each case, and (5) places where the events alleged as part of the conspiracy took place." *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978) (citations omitted); *see also United States v. Goff,* 847 F.2d 149, 166 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 324, 102 L.Ed.2d 341. The evidence at trial established that the conspiracy alleged in the indictment began on or about April of 1986 and continued long after Douglas was arrested in March of 1987. Furthermore, it was shown that Brown and Porter worked with Mikey Price to distribute cocaine to people in Dallas. The involvement of Brown and Porter was essentially continuous and repetitive. Douglas or Choice would phone Price in New York, and either Price or Brown delivered the substance to Douglas in Dallas. Furthermore, Porter and Bell, on several occasions met Brown and Price in Florida to obtain cocaine to transport to Dallas.

Evidence of the second alleged conspiracy, in any event, did not affect the substantial rights of Brown and Porter. The jury was instructed not to use such evidence (if there was any) in determining whether or not the conspiracy charged in the indictment was established. This instruction cured any prejudice which may have resulted from any incidental indications of a second conspiracy. *Winship,* 724 F.2d at 1123.

B. *Jury Instruction as to Count I* [2]

■ The trial judge instructed the jury that the government need not prove that a specific amount of cocaine was involved in the alleged conspiracy. Neither appellant objected to this instruction at trial. Therefore, for this Court to reverse, it must appear that this instruction amounted to "plain error." *United States v. Gammage,* 790 F.2d 431, 434 (5th Cir.1986). As discussed above, and held in *Morgan,* proof of the quantity of the controlled substance is

not an element of sections 841(a), and 846 of Title 21. Rather, quantity is only relevant as to sentencing. This Court finds no plain error.

C. *Sentencing on Count I*

■ At the time of the appellant's convictions, the language of 21 U.S.C. § 846 provided that a conspiracy "is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the ... conspiracy." [3] This does not set a mandatory minimum sentence. Sections 841(b)(1)(A) and (B) provide for a sentence of at least ten years for violations of section 841(a). Appellants contend, and the government concedes that the trial court erred in incorporating the mandatory minimum sentence of section 841(b)(1) into section 846. Under the rule of lenity, since section 846 does not set a mandatory minimum, and congressional intent is difficult to discern, this Court "should not interpret criminal statutes so as to pyramid penalties when such an interpretation is based only on guesswork as to what Congress intended." *United States v. McDonald,* 692 F.2d 376, 379 (5th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952. This error does not affect the convictions of Brown and Porter, but merely requires remand for resentencing as to Count I.

D. *Issues Relating to Brown Individually*

Appellant Brown argues that five of the six counts of distribution of cocaine must be reversed because insufficient evidence was presented to show that the substance involved was actually cocaine. [4] Brown claims that since the cocaine itself was not admitted into evidence, and no expert testimony was offered at trial to identify the

---

**2.** *See* note 1.

**3.** Effective November 18, 1988, this section was amended to read that anyone who "conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of

which was the object of the attempt or conspiracy."

**4.** At oral argument, Brown conceded that the evidence was sufficient to identify the substance as cocaine as to one count of distribution.

substance delivered by Brown, the government failed to prove the identity of the substance as cocaine.

This Court must review the evidence in the light most favorable to the government, under the requirements of *Glasser.* Additionally, we must affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126.

■ Circumstantial evidence, supported by lay testimony, may establish the identity of the substance involved. *United States v. Eakes,* 783 F.2d 499, 504 (5th Cir.1986), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567. Several people involved in the conspiracy testified at trial that cocaine obtained from Price was delivered by Brown, and it was handled in essentially the same manner on each occasion. First, substantial sums of money were paid for it. After delivery, it was carefully tested and weighed. The substance was then divided into smaller amounts and packaged in plastic sandwich bags. It was then distributed to various crack houses where it was eventually resold. These operations were conducted covertly in private houses. Furthermore, the witnesses whose testimony supports the above, also testified that they were experienced in identifying cocaine. Evidence of this continuing pattern was sufficient for the jury to conclude that the substance involved was in fact cocaine.

■ Brown also argues that comments made by the government during closing argument require reversal. Since Brown made no timely objection at trial, it must appear that the comments amounted to "plain error." *United States v. Brooks,* 786 F.2d 638, 642 (5th Cir.1986), *cert. denied,* 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 126. Specifically, Brown contends that the prosecutor told the jury that the government's witnesses were obliged to tell the truth pursuant to their plea agreement with the government, and that if they did not, "all deals are off and they get prosecuted." Record Vol. 7 at 230. This argument was made in response to Porter's implication that the government's witnesses may have lied due to their involvement or interest in the case. The prosecutor was entitled to fairly respond to this argument. *Brooks,* 786 F.2d at 642. Nevertheless, even if improper, the prosecutor's statement did not amount to plain error.

■ Next, Brown claims that the prosecutor improperly implied that extrinsic facts existed to impeach Brown, but that there was a "time crunch," and he was unable to develop this. A prosecutor may not inject extrinsic matter into his argument, which does not have a basis in the evidence presented during the trial. *United States v. Phillips,* 664 F.2d 971, 1030 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354. The prosecutor cited several inconsistencies in Brown's testimony, and how her testimony was contradicted by other witnesses. However, this prosecutor's conduct did not amount to plain error; it did not undermine the fundamental fairness of the trial, or cause a miscarriage of justice. *Brooks,* 786 F.2d at 642.

■ Lastly, Brown contends that the prosecutor impermissibly appealed to the jury's emotion, by saying "[d]rugs are a terrible thing and they are ruining the society ... [a]nd it's up to you to do something about it and that is returning a verdict of guilty on these charges." Record Vol. 7 at 235. While it is true that a prosecutor may not distract the jury's attention from applying the law, by making an appeal to passion or prejudice, "[u]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." *United States v. Phillips,* 664 F.2d at 1030, quoting *United States v. Lewis,* 547 F.2d 1030, 1037 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). In this case, the prosecutor's statements did not rise to the level of an improper law and order appeal. Even if construed to be improper, the argument did not amount to plain error.

## III. CONCLUSION

The convictions of Brown and Porter are affirmed, although this Court remands for resentencing of Count I, in accordance with this opinion.

AFFIRMED IN PART, REMANDED IN PART.