**UNITED STATES of America,
Plaintiff,**

v.

**Jimmie Lee PARKER and Frederick
Leon Dean, Defendants.**

**No. MO–99–CR–049.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

March 3, 2000.

John S. Klassen, United States Attorney's Office, Midland, TX, for U.S.

David Clyne Greenhaw, Law Office David Clyne Greenhaw, Odessa, TX, Rodion Cantacuzene, Jr., Cook, Cantacuzene & Higdon, P.C., Midland, TX, Merry A. Worley, Odessa, TX, Glen D. Aaron, Law Office of Glen Aaron, Midland, TX, for defendants.

## AMENDED ORDER DENYING DEFENDANT DEAN'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AFTER JURY VERDICT

FURGESON, District Judge.

Before the Court is the Motion for Judgment of Acquittal, filed by Defendant Frederick Dean pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. Dean and his Co–Defendant Jimmie Lee Parker were charged in a one-count indictment with aiding and abetting each other to possess with the intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A jury trial ensued. At the end of the Government's case, Dean orally moved for a judgment of acquittal under Rule 29(a). The Court denied the motion. At the end of the case, before jury deliberation, Dean repeated his oral motion for judgment of acquittal, which was again denied. After the jury returned a verdict of guilty, Dean filed the present Motion. After due consideration of the motion, arguments of counsel, evidence presented at trial and the controlling law, the Court is of the opinion that the Motion should be DENIED.

### ISSUES PRESENTED

The issues before the Court on this Rule 29 Motion for Judgment of Acquittal after Jury Verdict are:

1) Was the evidence presented at trial sufficient to support the conviction of

Defendant Frederick Leon Dean for the possession with intent to distribute "crack" cocaine?

2) Did the recent Supreme Court case *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) require the Government to prove beyond a reasonable doubt the amount of "crack" cocaine allegedly possessed by Defendant Dean; and if so, did the Government satisfy this burden?

## DISCUSSION

In his renewed Rule 29 Motion, Dean argues (1) that the evidence presented at trial was insufficient to support the verdict and (2) that the Government failed to prove beyond a reasonable doubt how much "crack" cocaine was allegedly possessed by Dean, as required by *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). After reviewing the evidence presented at trial in the light most favorable to the verdict, this Court concludes that there was sufficient evidence for a reasonable jury to find Dean guilty of the crime charged. The Court further finds that the constitutional questions raised by *Jones* do not apply to the finding of quantity under 21 U.S.C. § 841(b).

### A. Sufficiency of the Evidence

This Court will affirm a jury verdict of guilty if a rational trier of fact could have found that the elements of the offense were established beyond a reasonable doubt from the evidence presented at trial. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In determining whether the evidence presented at trial was sufficient to support the jury verdict, the Court will review the evidence in the light most favorable to the verdict. *See United States v. Salazar,* 66 F.3d 723, 728 (5th Cir.1995). In this case, a difficult situation is presented because the two Defendants were tried together, with the evidence more strongly inculpating Defendant Parker than Defendant Dean.

Although the evidence was admittedly weaker as to the involvement of Defendant Dean, this Court finds it was nonetheless sufficient to support the jury verdict of guilty. The primary evidence concerning Dean was from Katrina Blair, a confidential informant whose information and cooperation with Midland Police Detective Mitchell Russell led to the search warrant and ultimate arrest of the two Defendants. Ms. Blair testified specifically as to dealings with Defendant Parker regarding the sale of "crack" cocaine on several occasions, one of which occurred at the house in Midland, Texas where the two Defendants were staying. During these discussions, she talked solely to Parker, although Dean was present in the room at one time as a drug sale was being discussed.

When asked specifically about Dean, Ms. Blair admitted that she never talked with him or even knew what his name was. To clarify her testimony, the Court asked her why she thought and told Detective Russell that Dean and Parker were partners. She then referred to statements made by a minor, Adaca Ward, Parker's brother-in-law. Ms. Blair had initially obtained drugs from Ward, receiving a small amount of "crack" cocaine on credit to be paid by shoplifting shoes. While Adaca Ward did not testify, having claimed his Fifth Amendment privilege, the Court found that he was a co-conspirator and therefore admitted the statements he made to Katrina Blair. She testified that she believed the two Defendants were partners because Ward consistently used the word "they" when describing their activities: *"they were coming in from California, twelve o'clock, they are going to have all the dope. They're going to sew up Midland."*

The Government produced evidence that Dean and Parker traveled together to Midland from California by bus and therefore proved that Dean and Parker were the "they" referred to by Ward. The evidence further connected Dean to the crime, showing that he and Parker were

traveling with only one bag between the two men, which was in Dean's possession. Dean also had control of both bus tickets and all the money between the two. The jury was given four separate instructions on treating Ms. Blair's testimony with caution, relating to prior inconsistent statements, testimony of a confidential informer, testimony of a witness shown to have used addictive drugs, and prior convictions. The jury was repeatedly told in these instructions not to convict either Defendant based solely on the testimony of Ms. Blair unless it believed her testimony beyond a reasonable doubt. The Court must assume that the jury followed the instructions. *See United States v. Webster*, 162 F.3d 308, 324 (5th Cir.1998). Therefore, the ultimate jury verdict of guilty was supported by sufficient evidence and will be affirmed.

▉ Dean also contends that there was insufficient evidence to support the inference of intent to distribute. When the search warrant for "crack" cocaine was executed, law enforcement officers discovered two bags of "crack" concealed in a bag of dry dog food. One bag weighed more than five grams and the other bag weighed less than five grams. In answer to a special interrogatory, the jury found that Parker possessed with intent to distribute more than five grams of "crack" cocaine. In answer to another special interrogatory, the jury found that Dean possessed with intent to distribute less than five grams of "crack" cocaine. In light of the answers, it follows that the jury attributed the bag containing the smaller amount to Dean and the larger amount to Parker. Dean relies on this finding to support his argument that the amount possessed, less than five grams, is insufficient to infer intent to distribute. Dean calls the Court's attention to *United States v. Hunt*, in which the Fifth Circuit held that 7.998 grams of cocaine was an amount insufficient as a matter of law to infer intent to distribute because it is not necessarily inconsistent with personal use. *See United States v. Hunt*, 129 F.3d 739, 742 (5th Cir.1997).

The impact and necessity of the special interrogatories submitted to the jury will be discussed below. However, for the purpose of the sufficiency claim, the jury finding which attributed possession of less than five grams of drugs to Dean does not impact the verdict here. In *Hunt*, Detective Ruben Rodriguez testified that the amount of drugs found at the defendant's residence was distributable and that no smoking devices were present at the scene. The defendant in *Hunt* denied knowledge of the drugs that were found as well as any allegations that she had ever sold drugs. A neighbor further testified that she had never seen the defendant use or deal "crack" cocaine. The Court found that while intent to distribute may be inferred solely from the amount of drugs, the amount at issue in that case was not sufficient to support the inference absent other evidence.

In light of *Hunt*, if the only evidence against Dean were that he possessed less than five grams of "crack" cocaine, then the amount of drugs possessed would not alone be sufficient to support the charge of possession with intent to distribute. However, unlike *Hunt*, there was other evidence offered at trial indicating an intent to distribute. Adaca Ward told Katrina Blair that Parker and Dean were coming to Midland with drugs to sell. Later, Ms. Blair arranged to sell some of the drugs when she met with Parker and Dean. Therefore, there was enough evidence in addition to the amount of drugs attributed to Dean for the jury to find him guilty of possession with intent to distribute.

It also should be mentioned that, when the Court first read the jury's answers, it was surprised that the jury assigned a different ownership to each bag of "crack" cocaine. The purpose of the interrogatories was to ask the jury to find whether each Defendant possessed over five grams of "crack" cocaine, the threshold amount for an increased sentence. This was done to address a potential issue under the *Jones* decision, discussed below. The in-

terrogatories were not designed to determine the ownership of any particular bag of "crack" cocaine. After the verdict, this Court, still surprised by the answers, mentioned more than once from the bench that *no facts* were in evidence to support the jury's answers. Upon reflection, the Court believes that its observation was wrong. While there may be no *direct* evidence in support of the answers, there is adequate *circumstantial* evidence in support.

For example, as compared to Defendant Dean, Defendant Parker clearly had a more substantial involvement in the drug transactions in this case. Based on such facts in evidence showing such a substantial involvement on the part of Parker, the jury could certainly have inferred that the greater amount of "crack" cocaine belonged to Parker and that the lesser amount belonged to Dean. Further, since Dean carried the luggage and the money, the jury could have also concluded that Dean was a more minor player and just carried the bags for Parker, who in fact was the man in charge, controlling the biggest part of the drug action. Under the circumstances, the jury's answers are supported by the evidence.

As importantly, the answers make sense. Whether this Judge was surprised or did not anticipate the answers is beside the point. As noted, the Court asked the special interrogatories to cover any potential problem raised by the *Jones* case. Looking at the matter in one way through the lens of *Jones*, neither the Judge nor the lawyers in the instant case anticipated that the jury would look at the matter in another way and assign one bag of "crack" cocaine to each Defendant. Simply because the Judge and the lawyers had tunnel vision does not mean that the jury was required to follow suit. Indeed, the verdict shows once again how wonderfully insightful and smart juries are. It also reminds this Court of Justice Frankfurter's observation that wisdom too often never comes so one ought not reject it merely because it comes late. The answers to the special interrogatories are therefore accepted and will be a guide for sentencing.

## B. Amount of Drugs

As another basis for his Rule 29 motion, Defendant Dean contends that, under *Jones v. United States* and the Due Process Clause, the Government is required (1) to specifically charge in the indictment the amount of drugs he is alleged to have possessed with the intent to sell and then (2) to prove that amount beyond a reasonable doubt at trial as an element of the offense under 21 U.S.C. § 841. The amount of drugs was charged in the indictment; consequently, Dean attacks the second prong of the *Jones* formula. Because of *Jones*, the jury was instructed to answer special interrogatories regarding the amount of drugs possessed by each Defendant if it found either Defendant guilty of the crime charged. Despite the approach taken and the answers given, Dean still attacks the result. At the outset, the issue arises as to whether *Jones v. United States* applies to 21 U.S.C. § 841 to make the amount of drugs an element of the offense rather than a sentencing factor.

In *Jones v. United States*, the Supreme Court held that serious bodily injury or death were elements of the offense of carjacking under 18 U.S.C. § 2119, which must be found by a jury, rather than sentencing factors which need to be found by the judge. The Court came to this conclusion as a matter of statutory interpretation, because the statute itself did not clearly indicate Congress's intent as to whether serious bodily injury or death were elements of the offense or sentencing factors. To this end, the Court extensively analyzed the grammar and structure of the statute itself, in addition to congressional history. The statute involved reads as follows:

Whoever ... takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so shall—

(1) be fined under this title or imprisoned not more than 15 years, or both, (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

The Court noted that the first part, which the Government contended listed the elements of the offense, could not stand on its own as it did not specifically state what conduct is prohibited. *See Jones,* 119 S.Ct. at 1219. As another test of congressional intent, the Court looked to other statutes to see whether the element of serious bodily injury is typically treated as an element of the offense or a sentencing factor, under the assumption that Congress would not have departed from past practices without specifically saying so. *See id.* at 1220. However, the Court found this review to be unhelpful, as serious bodily injury has been treated as both an element of the offense and a sentencing factor.

Because of the ambiguity of the statutory language, therefore, the Court held that the statute should be read to create three separate offenses with serious bodily injury an element of the offense that must be charged and proven beyond a reasonable doubt. The statute involved in the present case, however, is structurally different from the car jacking statute, containing no such ambiguity as to congressional intent. *See United States v. Lilly,* 56 F.Supp.2d 856, 859 (W.D.Mich.1999) (noting that 21 U.S.C. § 841 is structurally identical to the statutes cited in *Jones* as clear delineations of congressional intent as to sentencing factors). Section 841(a) clearly lists the elements of the offense, while a variety of penalty factors (not simply three as in the car jacking statute) are listed in subsection (b).

These important differences in the statutes would distinguish *Jones* from the present case but for an "enigmatic footnote" that will probably cause "considerable confusion in the circuit courts." *See,*

*e.g., Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 926, 139 L.Ed.2d 912 (1998) (recognizing a different enigmatic footnote that similarly caused confusion as to the Court's holding). The Court interpreted the car jacking statute to require a finding of serious bodily injury as an element of the offense to *avoid* the question of whether the alternate interpretation would cause a constitutional violation. *See Jones,* 119 S.Ct. at 1222. The Court questioned whether under "the Due Process Clause of the Fourteenth Amendment and the jury guarantee of the Sixth: when a jury determination has not been waived, may judicial fact finding by a preponderance support the application of a provision that increases the potential severity of the penalty for a variant of a given crime?" *Id.* at 1224.

The Court expanded this question in Footnote 6 in response to the dissent by broadly stating the potential constitutional conflict as:

> under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Jones,* 119 S.Ct. at 1224 n. 6. However, the Court then immediately noted that prior cases only suggest rather than establish this principle and therefore that the concern about the constitutionality of treating serious bodily injury as a sentencing factor under the car jacking statute is only a "doubt, not certainty." *See id.* This "doubt" stated in such broad language has caused circuit courts to wonder whether the constitutional uncertainty that caused the Supreme Court to interpret the car jacking statute as delineating elements of the offense rather than sentencing factors also applies to more clearly drafted statutes such as 21 U.S.C. § 841. *See, e.g., United States v. Williams,* 194 F.3d 100, 106 (D.C.Cir.1999) (noting that "it is not at

856

all clear whether *Jones* applies broadly to all criminal statutes or is limited to the unique facts of that case.").

The D.C. and Tenth Circuits have both considered § 841 in light of *Jones* and held that *Jones* does not apply. In *Williams,* the D.C. Circuit Court concluded that the constitutional ambiguities discussed but not resolved in *Jones* were "too thin a reed" to override direct precedent holding the amount of the drug to be a sentencing factor. *See Williams,* 194 F.3d at 106. The D.C. Circuit noted that *Jones* merely expressed doubts about the constitutionality of the car jacking statute but never actually decided that the statute would be unconstitutional if serious bodily injury was considered a sentencing factor. *See id.*

The Tenth Circuit followed similar reasoning in *United States v. Jones,* 194 F.3d 1178 (10th Cir.1999). The Court discussed the statutory distinctions in the two cases to conclude that congressional intent is evident from the plain language of 21 U.S.C. § 841 and accordingly that there are not two possible interpretations to allow avoidance of a constitutional ambiguity as with the car jacking statute. *See Jones,* 194 F.3d at 1185–86. The Court noted that this still leaves the constitutional question of whether a factor that significantly impacts the penalty can be found by the judge rather than a jury; however, the Court considered itself bound by circuit precedent absent a clear decision from the Supreme Court. *See id.* (further noting that due process concerns are satisfied by notice of the possible application of an enhanced sentence in the presentence report and the opportunity to be heard at the sentencing hearing). The Court therefore refused to extend the suggestion in footnote 6 of *Jones v. United States* to overturn direct precedent holding that the quantity of drugs is a penalty factor under 21 U.S.C. § 841.

There is also direct precedent in the Fifth Circuit as to the penalty provisions of 21 U.S.C. § 841. In *United States v. Royal,* the Fifth Circuit held that quantity

was not an element of the offense under § 841 but rather a penalty factor. *See* 972 F.2d 643, 650 (5th Cir.1992) (finding also, similar to the Tenth Circuit, that due process concerns are met with the presentence report and sentencing hearing). Because of a recent opinion, however, there is now some question in the Fifth Circuit as to the extent of footnote 6 from *Jones.*

In *Bledsue v. Johnson,* a state habeas case, a different panel of the Fifth Circuit applied *Jones* to a Texas possession with intent to distribute statute, making quantity an element of the offense rather than a sentencing factor. *See* 188 F.3d 250, 260–61 (5th Cir.1999). While the Court appeared to take the broad statement in footnote 6 as the holding of the Supreme Court rather than as an immediately qualified expression of constitutional doubt, it finally decided that it would read the state statute at issue as creating three separate offenses similar to the car jacking statute to similarly avoid any constitutional concerns. *See id.* at 261. The Court considered the state statute at issue to be similar to the car jacking statute because it also set three levels of punishment, but did not further analyze the statutory intent. *See id.* at 260. The *Bledsue* Court never discussed or distinguished *Royal* and thus provides little insight for analyzing § 841 or for predicting the inclination of the Fifth Circuit.

Most recently, a panel of the Fifth Circuit discussed and noted the willingness of various panels of the Fifth Circuit to broadly construe *Jones. See United States v. Rios–Quintero,* 204 F.3d 214, 218 (5th Cir.2000) (reviewing Fifth Circuit cases applying the reasoning of *Jones* to different statutory provisions). Nonetheless, despite perceiving this "willingness to derive broad constitutional lessons from *Jones,*" the Court held that *"Jones* is simply too thin a reed upon which to hang a wholesale abandonment of this Court's pre-*Jones* precedent in this case." *Id.* at 219–18. The Fifth Circuit ultimately found that the unresolved constitutional issue

was not sufficient for a finding of plain error. *See id.*

 While discussing *Jones,* the Court in *Rios–Quintero* noted that the constitutional questions raised by *Jones* involved fair notice of the charge, submission to and a finding by the jury of all elements of the crime, and proof of all elements beyond a reasonable doubt. *See id.* The Court decided that none of those concerns were implicated in that case. *See id.* Similarly, in the present case all of the above named factors have been satisfied. As discussed above, the quantity of drugs alleged to be possessed with the intent to distribute was charged in the indictment, and a special interrogatory was submitted to the jury as to quantity. This court finds that the evidence presented at trial was sufficient to support a conviction and the Government met its burden of proof beyond a reasonable doubt, and therefore the constitutional concerns recognized in *Rios–Quintero* are not implicated.

Ultimately, this Court finds the reasoning of the 10th Circuit persuasive and will similarly continue to follow Fifth Circuit precedent squarely holding quantity to be a sentencing factor and not an element of the offense under 21 U.S.C. § 841. An enigmatic footnote in a Supreme Court opinion indicating possible constitutional concerns is too speculative for this Court to ignore circuit precedent and the trend of all circuit courts to address this issue since *Jones* was decided. Indeed, since the statement in footnote 6 would have such a broad ranging impact on the entire federal criminal jurisprudence, restraint by lower courts is necessitated, absent clearer direction from the Supreme Court. Therefore, this Court will disregard the special interrogatories posed to the jury in this case as unnecessary for the issue of guilt and will affirm the jury verdict as supported by sufficient evidence. Defendant Dean's challenge is accordingly determined to be without merit.

### Conclusion

The Court finds that there is sufficient evidence to support the jury verdict of guilty for possession with intent to distribute for Defendant Frederick Dean. After four separate cautionary instructions, the jury apparently believed the testimony of Katrina Blair, a confidential informant, about her negotiations to purchase "crack" cocaine brought to Midland by Parker and Dean. While Ms. Blair did not name Dean specifically, she testified to statements made by Adaca Ward, a co-conspirator that "they" were coming in from California to Midland with the drugs to sell to the Midland market. The further evidence that Dean traveled with Parker, that the two men had one bag between them, and that Dean carried both bus tickets and all money was sufficient for the jury to conclude that "they" were Parker and Dean. The surprising answer to the special interrogatory as to the amount of drugs each Defendant possessed with the intent to distribute does thus not relate to guilt and hence does not disturb the jury verdict. The Supreme Court has raised constitutional concerns as to whether elements that significantly affect the penalty ranges can be determined by the Court as a sentencing factor in harmony with Due Process and Sixth Amendment rights to a jury trial; however, absent further guidance from the Supreme Court, these unanswered concerns are not enough to cause this Court to ignore Fifth Circuit precedent squarely holding that quantity is a sentencing factor under 21 U.S.C. § 841. Accordingly,

It is ORDERED that Defendant Frederick Dean's Rule 29 Motion for Acquittal after Jury Verdict of Guilty be DENIED.